IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

| | | |
|---|---|---|
| STEPHANIE PORTWOOD, mother, | ) | |
| individually, and personal representative | ) | |
| of ERIC STEFAN BAGGETT, deceased, | ) | |
| and A.L.B., minor daughter and heir at law | ) | |
| of ERIC STEFAN BAGGETT, deceased, | ) | |
| | ) | Docket No. 3:13-cv-00186 |
| Plaintiffs, | ) | |
| | ) | JUDGE TRAUGER |
| v. | ) | |
| | ) | |
| MONTGOMERY COUNTY, | ) | |
| TENNESSEE and CORRECT | ) | WRONGFUL DEATH |
| CARE SOLUTIONS, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

FIRST AMENDED COMPLAINT

Come now the Plaintiffs, by and through their counsel of record, pursuant to Rule 15 of

the Federal Rules of Civil Procedure by consent of the parties, and Tenn. Code Ann. § 20-1-119,

and hereby files this first amended complaint and would show this Honorable Court as follows:

Introduction

1.      This action stems from the wrongful death of twenty-three year old Eric Stefan

Baggett while he was in the custody and control of Montgomery County at the Montgomery

County Jail.

2.      This action is brought pursuant to 42 U.S.C. § 1983 for violation of certain civil

rights as a result of actions and/or inactions of the Montgomery County, who, under color of law,

violated Eric Stefan Baggett's constitutional rights while acting in their official capacities and

under the color of law.

1

3.      This action is also brought pursuant to the Tennessee Governmental Tort Liability Act found at Tenn. Code Ann. § 29-20-101 *et seq.* the Tennessee Wrongful Death Statute found at Tenn. Code Ann. § 20-5-101, *et seq.* and for common law negligence as a result of the acts and omissions of Montgomery County by and through its employees, agents, and jail officials.

4.      Montgomery County, Tennessee has alleged the comparative fault of Correct Care Solutions ("CCS") in their answer, and CCS is being brought in by consent of the parties under Rule 15 of the Federal Rules of Civil Procedure and Tenn. Code Ann. § 20-1-119.

5.      The Plaintiffs currently have a pending motion to strike[1] filed on May 29, 2013, requesting the court to strike, with prejudice, any and all allegations and references of comparative fault against CCS from Montgomery County's answer as a result of Montgomery County's failure to comply with Tenn. Code Ann. § 29-26-122(b) by not filing a certificate of good faith within 30 days after alleging in their answer that CCS has comparative fault for Eric Stefan Baggett's death.

6.      Out of an abundance of caution as set forth more fully in Count IV below, in the event the Plaintiffs are wrong and their motion to strike is not well-taken, they have to file this amended complaint to bring in CCS and protect their interests so they do not face an empty chair.

Parties

7.      Plaintiff, Stephanie Portwood, is a citizen and resident of Montgomery County, Tennessee.  Stephanie Portwood is the biological mother and personal representative of Eric Stefan Baggett ("Baggett").  Plaintiff, Stephanie Portwood, brings this action individually and on behalf of her deceased son against the Montgomery County for the benefit of A.L.B who also

---

[1] (Docket Entry #10)

resides in Montgomery County, Tennessee and is the minor daughter and heir at law of Eric Stefan Baggett.

8.      Defendant, Montgomery County, Tennessee ("Montgomery County") owns, operates, maintains, staffs, and is responsible for the Montgomery County Jail where the acts and/or omissions in this complaint occurred.  Defendant Montgomery County, Tennessee is a governmental entity and political subdivision of the State of Tennessee.  Montgomery County is amenable to service of process through the Chief Executive Officer of the County located at: Office of the County Mayor, 1 Millennium Plaza, Clarksville, Tennessee 37040.  This Defendant has been properly served with process and is subject to the personal and subject matter jurisdiction of this court.

9.      Upon information and belief, Defendant Correct Care Solutions, LLC ("CCS") is a foreign corporation contracted to provide health care to inmates at the Montgomery County Jail and is registered to transact business in the State of Tennessee.  CCS is amenable to service of process through its registered agent:  Business Filings Incorporated, 800 South Gay Street, Suite 2021, Knoxville, Tennessee 37929-9710.  CCS has been properly served with process.

Jurisdiction and Venue

10.     This court has subject-matter jurisdiction for allegations of violations of civil rights pursuant to 42 U.S.C. § 1983, and original jurisdiction pursuant to 28 U.S.C. § 1331.  This action was removed to federal court pursuant to 28 U.S.C. § 1446(d).

Facts

11.     On or about January 23, 2012, Baggett voluntarily turned himself in to the Montgomery County Jail ("Jail") for violation of probation.

12.     Baggett was 23-years-old and in good health when he entered the Jail.

3

13.    The initial health assessment performed on Baggett when he entered the Jail revealed no abnormalities and normal breathing. When he entered the Jail, Baggett was not experiencing any coughing or difficulty breathing.

14.    At some point during his incarceration, Baggett developed a loud, persistent cough.

15.    The cough became so loud, persistent, and serious that Baggett suffered difficulty breathing and chest pains.

16.    Upon information and belief, at the time of Baggett's incarceration, the Jail had a policy on Sick Call Requests that provided: "any inmate in the facility who requests a sick call slip will be given that slip in a timely manner."

17.    The Jail's policy on sick call requests required the Deputy who takes the sick call slip from the inmate to determine if the nature of the request is emergent or nonemergent to insure that a potential emergency does not exist. Examples include chest pains, diabetic problems, and difficulty breathing.

18.    Baggett's cough was so serious, that one of his cellmates, inmate Watson, refused to go back to the cell because Baggett was "coughing like crazy." Jail officials were made aware that Baggett had been "sick for a week" and authorized inmate Watson's request to be moved to a different cell.

19.    During his incarceration, jail employees and officials could hear Baggett coughing loudly for several seconds on multiple occasions. The cough was loud and sounded rough and raspy.

20.    Throughout his incarceration, Baggett put in numerous requests for medical care.

21.    Some of Baggett's requests for medical care were ignored, denied or delayed.

4

22.     Throughout his incarceration, jail officials and employees knew of and were aware of the serious cough, chest pains, and difficulty breathing that Baggett was suffering.

23.     Jail officials and employees were aware of facts from which an inference could be drawn that a substantial risk of serious harm to Baggett existed and one or more of those officials and employees drew that inference.

24.     Jail officials and employees ignored the obvious and serious medical condition of Baggett, failed to investigate the condition enough to make an informed judgment, delayed treatment, interfered with access to treatment, and failed to provide treatment for the serious condition which led to the untimely death of Baggett on or about February 6, 2012.

25.     Jail officials and employees failed to follow the Jail's policy on sick call requests by (1) failing to give Baggett a sick call slip in a timely manner and by (2) failing to determine the emergent nature of Baggett's request.

26.     Baggett died at the age of 23 on or about February 6, 2012 while in the custody and care of Montgomery County.

<u>Count I – Civil Rights – 42 U.S.C. § 1983</u>

27.     The above-mentioned paragraphs are incorporated by reference.

28.     Montgomery County is a "person" to whom U.S.C. § 1983 applies.

29.     Baggett had a serious and severe medical condition and serious medical needs which were made known to Montgomery County, by and through its employees and jail officials, who were deliberately indifferent to the serious medical needs of Baggett.  Baggett was deprived of his right to be free from cruel and unusual punishment and to receive proper medical care as provided by the Eighth Amendment to the United States Constitution and made applicable to the States by the Fourteenth Amendment.

30.     Montgomery County, by and through its employees and jail officials, was deliberately indifferent to the serious medical needs of Baggett by ignoring or failing to properly address Baggett's serious medical condition of repeated loud coughing and difficulty breathing. Montgomery County was deliberately indifferent to the serious medical needs of Baggett by:

a. Ignoring the obvious condition of Baggett's persistent, loud, audible cough and difficulty breathing;

b. Failing to provide adequate and appropriate treatment for Baggett's serious condition;

c. Failing to investigate Baggett's serious condition enough to make an informed judgment on what care was needed;

d. Failing to properly train their employees on how to handle the serious medical condition such as the one suffered by Baggett;

e. Delaying much needed treatment to Baggett; and

f. Interfering with Baggett's access to medical treatment.

31.     Montgomery County, through its employees and jail officials, denied, delayed, or ignored Baggett's reasonable request for medical treatment in the face of his obvious need for medical attention which exposed Baggett to undue suffering and led to his untimely death.

32.     Jail officials were aware or should have been aware of the serious and substantial risk to Baggett's health because the coughing and difficulty breathing was so obvious.

33.     Montgomery County failed to properly train its employees and jail officials or to institute policies and procedures to avoid the harm which caused Baggett's death.

34.     Montgomery County failed to oversee or monitor its employees and jail officials to ensure they were properly taking care of prisoners in their custody and control.

6

35.     Montgomery County, by and through its employees and jail officials, had an official policy or custom or a tolerance of a custom or practice of personnel improperly handling sick calls and being in charge of inmates with serious medical conditions without adequate knowledge, supervision or training.

36.     Montgomery County's policy, custom, usage, or tolerance of a custom or policy as to how they dealt with Baggett's calls for medical help amounted to deliberate indifference and ultimately led to his death.

37.     Baggett's constitutional rights were violated pursuant to a policy, statement, ordinance, usage, regulation or decision that was officially adopted and promulgated by Montgomery County.

38.     Additionally, or in the alternative, Baggett's constitutional rights were violated by Montgomery County's tolerance of or widespread practice that, although not authorized by written law or express policy, is so permanent and well settled as to constitute a custom or usage with the force of law.

39.     All of the acts and omissions of Montgomery County amount to deliberate indifference.

40.     As a direct and proximate result of the constitutional violations of Montgomery County, Baggett died at the age of 23 while in the custody and care of Montgomery County.

41.     As a direct and proximate result of the constitutional violations of Montgomery County, Baggett suffered mental, emotional and physical pain and suffering prior to his death.

42.     As a direct and proximate result of the constitutional violations of Montgomery County, Plaintiffs have suffered damages for the loss of consortium of Baggett.  These damages

consist of, but are not limited to, tangible and intangible losses including the loss of Baggett's companionship, affection, love and enjoyment of life.

<u>Count II – GTLA – Tenn. Code Ann. § 29-20-101 *et seq.*</u>

43.     All of the above-mentioned paragraphs are incorporated by reference.

44.     Each of the acts and omissions of Montgomery County alleged in this complaint were done by the Montgomery County and its "Employees" as that term is defined in Tenn. Code Ann. § 29-20-102 (2).  The acts and omissions were done within the scope of employment with Montgomery County and under the color and pretense of the statutes, ordinances, regulations, customs, and usages of the State of Tennessee, and the Government of Montgomery County, Tennessee.

45.     Montgomery County is responsible and liable for the actions of its employees and jail officials since the employees were acting within the course and scope of employment.

46.     Montgomery County and their employees and jail officials had a duty to exercise reasonable care to protect Baggett from foreseeable and unreasonable risks of harm.

47.     Montgomery County, by and through their employees and jail officials, knew of the coughing and breathing difficulties Baggett was experiencing, and failed to help him.

48.     Montgomery County, by and through their employees and jail officials, failed to exercise reasonable care to protect Baggett by failing to address, or improperly addressing, Baggett's serious medical needs.

49.     One or more of the employees and jail officials failed to follow proper protocol, standards, and procedures after learning of the serious medical needs of Baggett.

50.     As a result of Montgomery County's acts and omissions, Baggett died while in the custody and care of Montgomery County.

51.     Additionally, or in the alternative, Montgomery County, through its employees and jail officials, were negligent in their supervision, monitoring, and care of Baggett in light of his serious and obvious medical condition.

52.     Concurrent with the acts and omissions of the employees and jail officials of Montgomery County, Montgomery County was negligent in failing to properly train, educate, and supervise the jail employees on how to properly handle a serious medical condition such as the one suffered by Baggett.

53.     Montgomery County, through its employees and jail officials was negligent in the implementation of policies, regulations, and procedures designed to guide their actions when inmates have serious medical conditions such as the one Baggett suffered.

54.     Montgomery County, through its employees and jail officials, violated the policies, regulations, and procedures designed to guide their actions when an inmate has a serious medical condition such as the one suffered by Baggett.

55.     Additionally, or in the alternative, Montgomery County had an inadequate policy or custom as to the proper way to handle a serious medical condition such as the one Baggett suffered from.

56.     As a direct and proximate result of the acts and omissions of Montgomery County, Baggett experienced mental, emotional, and physical pain and suffering prior to his death.

57.     As a direct and proximate result of the acts and omissions of Montgomery County, Plaintiffs have suffered damages for the loss of consortium of Baggett.  These damages consist of, but are not limited to, both tangible and intangible losses, including the loss of their son's companionship, affection, love, and enjoyment of life.

## Count III – Common Law Negligence

58.     All of the above-mentioned paragraphs are incorporated by reference.

59.     Montgomery County was negligent and/or reckless in the following manner:

   a.  Failed to provide reasonable care to Baggett even though Montgomery County knew or should have known he was suffering from a serious medical condition of persistent coughing and difficulty breathing;

   b.  Failed to properly monitor Baggett in light of his serious medical condition;

   c.  Failed to get Baggett the appropriate help he needed to treat his serious medical condition;

   d.  Ignored Baggett's multiple requests for medical help.

60.     As a direct and proximate result of the acts and omissions of Montgomery County, Baggett died while in the custody and care of Montgomery County.

61.     As a direct and proximate result of the acts and omissions of the Montgomery County, Baggett experienced mental, emotional, and physical pain and suffering prior to his death.

62.     As a direct and proximate result of the acts and omissions of Montgomery County, Plaintiffs have suffered damages for the loss of consortium of Baggett.  These damages consist of, but are not limited to, both tangible and intangible losses, including the loss of their son's companionship, affection, love, and enjoyment of life.

10

<u>Count IV – Correct Care Solutions</u>

63.     The Plaintiffs did not originally sue CCS.

64.     Montgomery County alleged the comparative fault of CCS in their answer filed on March 13, 2013.

65.     Because of the allegation of comparative fault, the Plaintiffs have no choice but to file this amended complaint to bring CCS in as a party.

66.     This action against CCS is brought pursuant to Tenn. Code Ann. § 20-1-119 and Rule 15 of the Federal Rules of Civil Procedure by consent of the parties.

67.     CCS is the medical service provider for Montgomery County and subject to the Tennessee Health Care Liability Act found at § 29-26-101 *et seq.* because they are a "health care provider" as that term is defined in Tenn. Code Ann. § 29-26-101 *et seq.*

68.     The Plaintiffs believe any action against CCS is governed exclusively by the Tennessee Health Care Liability Act found at § 29-26-101 *et seq.* and must be brought in strict compliance with the Act.

69.     The Plaintiffs provided proper pre-suit notice to CCS under Tenn. Code Ann. § 29-26-121 *et seq.* extending the applicable statute of limitations one hundred twenty (120) days from the date of expiration of the statute of limitations applicable to CCS while they investigated CCS's liability.  That 120 day extension expires on or about June 3, 2013 ("health care liability limitations period").

70.     Despite diligent efforts, the Plaintiffs have been unable to secure an expert who will satisfy the requirements of Tenn. Code Ann. § 29-26-115 and Tenn. Code Ann. § 29-26-122 as to CCS.  Therefore, Plaintiffs cannot file an action under the Tennessee Health Care Liability Act against CCS on or before June 3, 2013.

11

71. The Plaintiffs rely on Tenn. Code Ann. § 20-1-119 and principles of justice and equity to bring in CCS. Under this statute, the Plaintiffs have ninety (90) days from the filing of Montgomery County's answer to add CCS as a defendant. That 90 day period expires on June 11, 2013.

72. However, Plaintiffs further acknowledge the federal case of Schultz v. Davis, 495 F.3d 289 (6th Cir. 2007) which conflicts with Tennessee state case law[2] interpreting § 20-1-119. Schultz holds that § 20-1-119 does not allow a Plaintiff to add a potentially liable party discovered before the limitations period expires. Id. at 295 (emphasis added). Here, the Plaintiffs have discovered the potentially liable party, CCS, before the health care liability limitations period expires (June 3, 2013), but are unable to file a health care liability action against CCS because they are unable to satisfy the strict filing requirements of The Tennessee Health Care Liability Act.

73. Plaintiffs are faced with a situation where (1) they cannot file an action against CCS directly before the health care liability limitations expires on June 3, 2013; and (2) they cannot wait until after June 3, 2013 to file and rely on Tenn. Code Ann. § 20-1-119 because of the holding in Schultz.

74. Montgomery County alleges in their answer that it "is entitled to rely upon the professional decisions and opinions of the medical service providers with whom it contracts for medical care of inmates."

75. Montgomery County further alleges in their answer that "to the extent the Plaintiff's claims are the result of negligence or a failure to provide services by Correct Care Solutions, then the Doctrine of Comparative Fault applies to it as well."

---

[2] See, Romine v. Fernandez, 124 S.W.3d 599, 605 (Tenn. Ct. App. 2003) and Townes v. Sunbeam Oster Co., Inc, 50 S.W.3d 446 (Tenn. Ct. App. 2001).

76.     To the extent the judge or jury should find any negligence, responsibility, or fault attributable to CCS, the Plaintiffs hereby sue CCS for their "negligence or failure to provide services," and/or Montgomery County's "reliance upon the professional decisions and opinions of the medical service providers with whom it contracts for medical care of inmates."

77.     The Plaintiffs fear that if they do not file this amended complaint to allege negligence against CCS, and the judge or jury finds that CCS is guilty of negligence, then the Plaintiffs' damages would be decreased by the percentage of negligence placed on CCS.  Since Montgomery County has alleged negligence against CCS, the Plaintiffs are left with no choice but to file this amended complaint at this time and make CCS a party to this action.


PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand a judgment granting them the following relief:

a.   A jury trial on all issues triable by a jury.

b.   Judgment for compensatory damages in the amount of $5,000,000.00 for the injuries and wrongful death of Eric S. Baggett inclusive of pain and suffering, funeral and burial expenses, and the pecuniary value of his life as well as all damages allowable under Tenn. Code Ann. § 20-5-101, *et seq.*

c.   Judgment for punitive damages to the extent applicable in an amount to be determined at trial.

d.   Attorney's fees pursuant to 42 U.S.C. § 1988.

e.   Any additional relief this Court deems just, proper, and equitable, including, but not limited to, prejudgment interest, court costs, and discretionary costs.

13

Respectfully submitted,

ROCKY McELHANEY LAW FIRM, P.C.


  /s/ Russell Belk
Russell Belk, BPR #27960
1516 16th Avenue South
Nashville, Tennessee 37212
Phone: (615) 425-2500
Fax: (615) 425-2501
Email: russell@rockylawfirm.com


<u>CERTIFICATE OF SERVICE</u>

I certify that a true and exact copy of the foregoing Plaintiff's First Amended Complaint was served upon the following attorneys for the defendant via email and electronic service on May 31, 2013.

Mark Nolan (BPR# 015859)
Kathryn W. Olita (BPR# 023075)
Batson Nolan PLC
121 South Third Street
Clarksville, TN 37040
Phone:  931-647-1501
dmnolan@batsonnolan.com
*Attorneys for Defendant*s

/s/ Russell Belk
Russell Belk

14