IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| STEPHANIE PORTWOOD, mother, individually, and personal representative of ERIC STEFAN BAGGETT, deceased, and A.L.B., minor daughter and heir at law of ERIC STEFAN BAGGETT, deceased,<br><br>Plaintiff,[1]<br><br>v.<br><br>MONTGOMERY COUNTY, TENNESSEE, and CORRECT CARE SOLUTIONS, LLC,<br><br>Defendants. | Case No. 3:13-cv-0186<br>Judge Aleta A. Trauger |

## MEMORANDUM

Pending before the court is defendant Correct Care Solutions, LLC's ("CCS") Motion to Dismiss the First Amended Complaint. (Docket No. 20.) The plaintiff has filed a Response in opposition (Docket No. 21), to which defendants CCS and Montgomery County, Tennessee (the "County") have filed Replies (Docket Nos. 24 (CCS) and 25 (County)). For the reasons discussed herein, CCS's motion will be granted and the claims against CCS will be dismissed with prejudice. Additionally, the County's comparative fault defense as to CCS will be stricken with prejudice.

## BACKGROUND

**I. Overview[2]**

---

[1] Although the Complaint is styled as if there are two plaintiffs, Stephanie Portwood is suing in a representative capacity on behalf of both her son and her granddaughter.

1

This action stems from the untimely death of a 23-year-old father and son, Eric Stefan Baggett. Mr. Baggett died on or about February 6, 2012, when he was in the custody of the County and serving time at the Montgomery County Jail. Portwood is Mr. Baggett's mother. Individually and on behalf Mr. Baggett and Mr. Baggett's minor daughter, Portwood filed this action against the County on February 4, 2013. Defendant CCS was added to the case in the plaintiff's First Amended Complaint ("FAC"), and CCS now moves this court to dismiss the claims against it.

## II. Factual Background

Mr. Baggett voluntarily turned himself in to the Montgomery County Jail on or about January 23, 2012 for violating his probation. When he entered the jail, he was medically evaluated and found to be in good health. At some point during his incarceration, Mr. Baggett developed a cough. The cough was loud and persistent and caused Mr. Baggett to suffer difficulty breathing and chest pains. In accordance with the jail's policy on illness, Mr. Baggett requested a sick call slip. The jail's policy requires that a deputy retrieve the sick call slip from the inmate and determine "if the nature of the request is emergent or nonemergent to insure that a potential emergency does not exist." Examples of emergent requests include chest pains, diabetic problems, and impaired breathing. (Docket No. 11 at ¶¶ 16-17.)

Mr. Baggett submitted multiple requests for medical care throughout his incarceration. The plaintiff alleges that at least some of these requests were ignored, denied, or delayed. Moreover, at some point during Mr. Baggett's incarceration, one of his cellmates refused to share a cell with Mr. Baggett because of his persistent cough. Portwood alleges that jail officials

---

[2] Unless otherwise indicated, the facts are drawn from the plaintiff's First Amended Complaint. (Docket No. 11.)

were made aware by the other inmate that "Baggett had been 'sick for a week'" and, thereafter, authorized the inmate's request to be moved to a different cell. Although County officials and employees were aware of "facts from which an inference could be drawn that a substantial risk of serious harm" to Baggett existed, Portwood alleges that County officials and employees failed to investigate the condition enough to make an informed judgment and failed to provide adequate treatment for Mr. Baggett's condition. Mr. Baggett died on or about February 6, 2012, while in the custody and care of the County.

## III. Procedural Background

Portwood filed this action against Montgomery County on February 4, 2013, in the Circuit Court for Montgomery County at Clarksville, Tennessee. (Docket No. 1, Ex. 1). The Complaint alleged civil rights violations pursuant to 42 U.S.C. § 1983 against the County, as well as claims under the Tennessee Governmental Tort Liability Act, T.C.A. § 29-20-101, *et seq.*, the Tennessee Wrongful Death Statute, T.C.A. § 29-5-101, *et seq.*, and common law negligence claims. Montgomery County removed the action to this court on March 5, 2013, and answered the Complaint on March 13, 2013. (*See* Docket Nos. 1, 5.) In its answer, Montgomery County asserted various affirmative defenses, including the doctrine of comparative fault as to the County's medical service provider, CCS. (Docket No. 5 at 8-9.) CCS is a corporation that contracts with the County jail to provide medical services to inmates.

Portwood moved to strike the County's affirmative defense related to CCS pursuant to Rule 12(f) on May 29, 2013. Portwood argued that, because the County did not comply with certain procedural requirements set forth by the Tennessee Health Care Liability Act, T.C.A. § 29-26-101, *et seq.* ("THCLA" or the "Act"), the defendant's affirmative defense as to CCS should be stricken with prejudice pursuant to Section 122(c) of the Act. Two days after filing

3

her motion to strike, Portwood filed her FAC, which added claims against CCS under the THCLA. In her FAC, Portwood explained that she felt necessarily compelled to add CCS as a party pursuant to T.C.A. § 20-1-119(a) because, if she did not do so, she would run the risk of a diminished recovery if the County succeeded at trial in demonstrating that CCS was partially or completely at fault. As Portwood suggested, without CCS, she would be left facing the County with an "empty chair defendant" possibly being attributed with blame.

In opposition to Portwood's motion to strike, the County argued that the plaintiff's motion was untimely under Federal Rule of Civil Procedure 12(f), which requires that such a motion be made within 21 days after being served with a pleading. (Docket No. 12.) On June 5, 2013, the court denied the plaintiff's motion to strike as untimely, as the motion was filed almost two months beyond this deadline. (Docket No. 15.)

On June 26, 2013, CCS filed the instant motion to dismiss the FAC on the grounds that the plaintiff failed to comply with the strict filing requirements of the THCLA, which imposes certain procedural requirements on parties asserting medical malpractice claims. *See* T.C.A. § 29-26-121, T.C.A. § 29-26-122. The plaintiff opposed CCS's motion and, in her opposition brief, renewed her motion to strike the County's affirmative defense implicating CCS. She submits, "It was Montgomery County's comparative fault defense that served as the basis for CCS's involvement in the case" and requests that, if the court dismisses her claims against CCS, it also dismiss the County's comparative fault allegations against CCS because, like her, the County also failed to satisfy the statutory directives of the THCLA. (Docket No. 21.)

Per an order from the court, both defendants submitted Replies to Portwood's opposition brief. (Docket Nos. 22, 24-25.) The County argued, *inter alia*, that Portwood's renewed motion to strike should be denied. The County also asserted that its comparative fault defense related to

4

CCS should continue, despite its failure to comply with Tennessee law, because its defense was grounded in ordinary negligence and not medical malpractice. (Docket No. 25.)

## ANALYSIS

**I.**  **Motion to Dismiss Standard**

In deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court will "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007); *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002). The Federal Rules of Civil Procedure require only that a plaintiff provide "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). The court must determine only whether "the claimant is entitled to offer evidence to support the claims," not whether the plaintiff can ultimately prove the facts alleged. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

The complaint's allegations, however, "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To establish the "facial plausibility" required to "unlock the doors of discovery," the plaintiff cannot rely on "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action," but, instead, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 1950.

5

Before turning to the merits of CCS's Rule 12(b)(6) motion to dismiss, the court will briefly describe the federal statute under which the plaintiff has asserted her claims.

## II. The Tennessee Health Care Liability Act

The THCLA is Tennessee's statute governing causes of action for medical malpractice. The THCLA includes elements and procedural requirements that distinguish medical malpractice claims from claims for common law negligence. The Tennessee Supreme Court has noted that the distinction between medical malpractice and other forms of negligence is subtle. It articulated the following standard for identifying claims for medical malpractice:

> When a claim alleges negligent conduct which constitutes or bears a substantial relationship to the rendition of medical treatment by a medical professional, the medical malpractice statute is applicable. Conversely, when the conduct alleged is not substantially related to the rendition of medical treatment by a medical professional, the medical malpractice statute does not apply.

*Estate of French v. Stratford House*, 333 S.W.3d 546, 554 (Tenn. 2011). Accordingly, the distinction "turns on whether the acts or omissions complained of involve a matter of medical science or art requiring specialized skills not ordinarily possessed by lay persons or whether the conduct complained of can instead be assessed on the basis of common everyday experience of the trier of fact." *Id.* at 556. Courts must review claims and determine whether "the gravamen of the complaint is medical malpractice or negligence," based on certain factors. *See, e.g.*, *Estate of French*, 333 S.W.3d at 555-60; *see also Williams-Ali v. Mountain States Health Alliance*, No. 2012-00724, 2013 WL 357580, at *4-5 (Tenn. Ct. App. Jan. 30, 2013). The designation given to a negligence claim by either party is not determinative of its nature; it is the role of the court to determine whether a claim constitutes a medical malpractice claim and, consequently, is subject to the rigorous procedural requirements of the THCLA.

Under the statutory provisions at issue in the present case, Tennessee Code Annotated §§ 29-26-121 and 29-26-122, the THCLA requires that, in any health care liability action in which expert testimony is required, the plaintiff must give a 60-day pre-suit notice to the defendant and must file a certificate of good faith with her complaint.

### A. The Pre-Suit Notice Requirement

Section 121 of the THCLA provides that any person "asserting a potential claim for health care liability shall give written notice of the potential claim" to each named defendant "at least sixty (60) days before the filing of a complaint based upon health care liability." T.C.A. § 29-26-121(a) (2013). The notice must include, *inter alia*, the name and date of birth of the patient, a list of any other providers receiving notice, and a HIPAA compliant medical authorization form permitting the provider to obtain medical records from all other providers receiving notice. *Id.* The statute provides guidelines for the plaintiff as to proper service of the notice and requires that compliance with the provision be demonstrated by filing "a certificate of mailing from the United States postal service" and "an affidavit of the party mailing the notice establishing that the specified notice was timely mailed." T.C.A. § 29-26-121(a)(4). When subsequently filing her complaint alleging a claim for medical malpractice, a plaintiff is required to plead compliance with the notice requirement and attach to the complaint the proof of compliance. T.C.A. § 29-26-121(b).

### B. The Certificate of Good Faith Requirement

In addition to the notice requirement, the THCLA also provides that, "in any medical malpractice action in which expert testimony is required by [T.C.A.] § 29-26-115, the plaintiff or plaintiff's counsel shall file a certificate of good faith with the complaint." T.C.A. § 29-26-122(a) (2013). Expert testimony is required under T.C.A. § 29-26-115, except where the act of

7

alleged malpractice lies within the knowledge of ordinary laymen. *See Kenyon v. Handal*, 122 S.W.3d 743, 758 (Tenn. Ct. App. 2003). The certificate of good faith must show that the plaintiff or the plaintiff's counsel has conferred with one or more competent experts, and those expert or experts must then provide a "signed written statement" confirming that "a good faith basis [exists] to maintain the action consistent with the requirements of § 29-26-115." T.C.A. § 29-26-122; *see also Myers v. AMISUB (SFH), Inc.*, 382 S.W.3d 300, 309 (Tenn. 2012).

Section 122 further provides that, within 30 days after a defendant has alleged in an answer that a non-party is at fault for the injuries or death of the plaintiff and expert testimony is required to prove fault, each defendant must file a certificate of good faith. T.C.A. § 29-26-122(b). If either a plaintiff or a defendant fails to comply with Section 122, the plaintiff's complaint or the defendant's allegations of fault against a non-party are, upon motion, subject to mandatory dismissal with prejudice. T.C.A. § 29-26-122(c). The statute includes exceptions for compliance where "extraordinary cause" is shown, or where the plaintiff demonstrates that the failure was due to the provider's failure to timely provide copies of the claimant's records. *Id.*

The Tennessee Supreme Court has examined Sections 121 and 122 of the THCLA and concluded that the procedural requirements are mandatory and, therefore, must be strictly enforced by the courts. *Myers*, 382 S.W.3d at 309. The court explained, "The requirements of pre-suit notice of a potential claim under [the THCLA] and the filing of a certificate of good faith . . . are *fundamental to the validity of the respective statutes* and dictate that we construe such requirements as mandatory." *Id.* at 309 (emphasis added). Consequently, courts have routinely dismissed plaintiffs' medical malpractice claims against defendants where the plaintiffs fail to comply with Sections 121 and 122. *See Myers*, 382 S.W.3d at 309 (dismissing plaintiff's claim with prejudice upon defendant's motion to dismiss because, after voluntarily dismissing

8

his initial action and re-filing the same claim as a new action, the plaintiff failed to serve notice of claim and to file certificate of good cause upon erroneous belief that compliance in previous action was sufficient); *see also Groves v. Colburn*, No. M2012-01834, 2013 WL 3964758, at *3-4 (Tenn. Ct. App. July 30, 2013) (dismissing plaintiff's claim with prejudice where plaintiff had included certificate of good faith in initial complaint against medical center but, when she amended her complaint to add an additional defendant, she failed to submit a second certificate of good faith); *Gilmore v. Roane County, Tennessee, et al.*, No. 13-124, 2013 WL 5777792, at *2 (E.D. Tenn. Oct. 25, 2013) (dismissing with prejudice a plaintiff's claim against a county government and emergency medical technicians because the plaintiff failed to include a good faith certificate with her complaint and failed to comply with the notice requirements of Section 121).

### III.  The Plaintiff's Medical Malpractice Claim against CCS

CCS moves to dismiss the complaint on two grounds: first, because Portwood failed to file a certificate of good faith as required by Section 122 with her FAC; and second, because Portwood failed to attach proof of service of the pre-suit notice and an affidavit as required by Section 121(b). In the FAC, Portwood admits her failure to comply with Section 122 and submits that, "despite diligent efforts," she has been "unable to secure an expert who will satisfy the requirements of" the good faith certificate provision. Moreover, although Portwood pleads that she provided pre-suit notice to CCS in the FAC, she indeed fails to attach the statutorily required proof of compliance. (Docket No. 11.) Finally, Portwood submits zero evidence that her failure to comply with Sections 121 and 122 is due to extraordinary cause or any other reason.

9

It is well settled that failure to comply with Sections 121 and 122 is fatal to a THCLA claim. *See Myers*, 382 S.W.3d at 309 (concluding that "the legislature intended the requirements to be mandatory" and, therefore, "if the certificate is not filed with the complaint, the complaint shall be dismissed") (internal citations omitted); *see also Groves*, 2013 WL 3964758, at *3-4. Under the Act, a plaintiff's complaint that is procedurally defective under Sections 121 and 122 must be dismissed with prejudice. Accordingly, Portwood's THCLA claim against CCS will be dismissed with prejudice and CCS will be dismissed from the action.

## IV. The Plaintiff's Renewed Motion to Strike the County's Affirmative Defense

In her Response in opposition to CCS's motion to dismiss, Portwood argues that, if the court dismisses her claim against CCS for failure to comply with Section 122, it should also strike the County's allegations of fault assigned to CCS because the County similarly failed to comply with Section 122. (*See* Docket No. 21.) The court previously rejected an identical motion to strike filed by Portwood on the grounds that her motion was untimely. (*See* Docket No. 15.)

### A. Rule 12(f)

As an initial matter, Federal Rule of Civil Procedure 12(f) permits the court to strike, at any time, an "insufficient defense or any redundant, immaterial, impertinent, or scandalous" matter. Fed. R. Civ. P. 12(f)(1). The Rule further permits parties to submit a motion to strike such matters within 21 days after being served with a pleading. Fed. R. Civ. P. 12(f)(2). The court initially denied Portwood's motion to strike as untimely because it was not filed within the 21-day period set forth in Rule 12(f)(2). However, Section 122(b) of the THCLA grants a defendant who has alleged a comparative fault defense against a non-party 30 days to file a certificate of good faith following service of the answer. Accordingly, upon comparison of the

10

two statutes, if the plaintiff had filed her motion to strike within the 21-day period permitted by Rule 12, the motion would have been premature, as the defendant is permitted by the THCLA to file its certificate for up to 30 days after service of its pleading. *Compare* Fed. R. Civ. P. 12(f) *with* T.C.A. § 29-26-122(b). Accordingly, upon closer review of the THCLA and the plaintiff's prior motion to strike, the court concludes that it erred by denying Portwood's initial motion to strike as untimely.

### B. The Plaintiff's Renewed Motion to Strike

Sections 121 and 122 expressly require that, if the County's comparative fault defense against CCS is grounded in medical malpractice against CCS, the County must fulfill the rigorous procedural requirements set forth by the THCLA. The County has admitted that it failed to do so. (*See* Docket Nos 14, 25.) Accordingly, by the statute's plain language, it appears that the County's affirmative defense is defective and must be stricken. However, in an attempt to circumvent the procedural requirements of the THCLA and avoid the mandatory dismissal of its allegations against CCS, the County urges the court to categorize its allegations against CCS as "ordinary negligence claims" rather than medical malpractice claims that trigger the procedural requirements of Sections 121 and 122.

The Tennessee Supreme Court has previously stated that "cases involving health or medical entities do not automatically fall within the medical malpractice statute." *Draper v. Westerfield*, 181 S.W.3d 283, 290 (Tenn. 2005). Pursuant to guidance offered by the Tennessee Supreme Court, courts assessing the nature of a negligence claim against a healthcare provider must determine whether the allegations related to the non-party "bear a substantial relationship" to medical treatment. *See Estate of French*, 333 S.W.3d at 557. Consequently, the critical inquiry here is whether the County's allegations against CCS in its affirmative defense and their

relationship to the plaintiff's claims against the County bear a substantial relationship to Mr. Baggett's medical treatment.

The text of the County's affirmative defense related to CCS in its Answer is helpful to this inquiry. The relevant portion reads:

> 5. To this end, Defendant pleads the Doctrine of Comparative Fault and avers that the negligence of the Plaintiff's decedent or the Plaintiff's decedent's own actions caused or contributed to his injuries and damages, if any exist. Defendant further pleads the Doctrine of Comparative Fault to the extent that the negligence of the Plaintiff or the Plaintiff's own actions caused or contributed to the alleged injuries. Any fault or negligence of the Plaintiff or the Plaintiff's decedent requires a deduction of damages equal to their own fault under the Doctrine of Comparative Fault. *In addition, Defendant affirmatively asserts that it is entitled to rely upon the professional decisions and opinions of the medical service providers with whom it contracts for medical care of inmates. Defendant avers that to the extent the Plaintiff's claims are the result of negligence or a failure to provide services by Correct Care Solutions, then the Doctrine of Comparative Fault applies to it as well.*

(Docket No. 5 at 8-9 (emphasis added).) On its face, the language of the affirmative defense indicates fault that can be assigned to the "professional decisions and opinions of the medical service providers." The language is straightforward and clearly refers to CCS's role in the diagnosis and treatment of Mr. Baggett while he was incarcerated. Undoubtedly, this bears a substantial relationship to Mr. Baggett's medical treatment.

Nevertheless, in its Reply, the County attempts to "spin" its comparative fault defense into an ordinary negligence claim. It asserts that its defense applies solely "with regard to the Plaintiff's claims of failure to timely provide medical services or delay in providing such services" to Mr. Baggett and, therefore, sounds in ordinary negligence. It continues that the allegations could be related to "a delay in Mr. Baggett receiving medical attention from the contracted medical provider CCS," "failure to follow a policy regarding the handling of a Call Slip or failure of a CCS staff member to correctly process the Call Slip or collect the patient and

bring him to the infirmary" and, therefore, not CCS's "diagnosis, care, and medical treatment" as to Mr. Baggett. (Docket No. 25 at 10.)

As an initial matter, the plaintiff's claims against CCS in the FAC were clearly asserted as medical malpractice claims pursuant to the THCLA and related to CCS's role as a medical treatment provider within the jail. (*See* Docket No. 11 ¶¶ 66-68.) Accordingly, for purposes of the motion to strike, the gravamen of the plaintiff's FAC against CCS is medical malpractice and not ordinary negligence. Similarly, the County's pleading clearly states an affirmative defense related to the "*professional decisions and opinions of the medical service providers*." (Docket No. 5 at 8-9 (emphasis added).) The court finds it implausible that, by alleging the comparative fault defense related to CCS's "professional decisions and opinions," the County was solely alleging that CCS failed to properly process a call slip or transport the patient to the infirmary. The court concludes that the essence of both the FAC and the County's affirmative defense implicating CCS is medical malpractice and, accordingly, the County's affirmative defense is subject to the rigorous procedural requirements of the THCLA. Because the County failed to file a certificate of good faith within 30 days of filing its affirmative defense implicating CCS, the affirmative defense will be stricken with prejudice pursuant to the THCLA Section 122(c) and Rule 12(f).

### C. The County's Comparative Fault Request

In a final effort to salvage its comparative fault defense against CCS, the County argues that Tennessee law permits a party to allege a comparative fault defense against an immune non-party, even if that party is dropped from the case. It relies upon case law in which courts have permitted comparative fault defenses against immune non-parties, such as government entities entitled to sovereign immunity. (*See* Docket No. 25 at 11-13.) These cases are distinguishable

because here, CCS is not immune from suit; instead, both the plaintiff's claims against CCS and the defendant's affirmative defense against CCS are procedurally defective and, pursuant to statutory directive, must be dismissed with prejudice. Furthermore, the court notes that its dismissal of the County's comparative fault defense is grounded in the County's allegations against CCS, which the court has construed as medical malpractice allegations.

## **CONCLUSION**

For the foregoing reasons, CCS's Motion to Dismiss the First Amended Complaint (Docket No. 20) will be granted, and defendant Montgomery County's comparative fault defense relative to CCS will be stricken.

An appropriate order will enter.

_____
ALETA A. TRAUGER
United States District Judge